**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | |
|---|---|
| **PATRICK DUNN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION**  1:18-cv-77-HSO-JCG |
| ) | |
| **TACO BELL OF AMERICA,** ) | |
| **LLC,** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

Comes now the Plaintiff, Patrick Dunn, ("hereinafter Plaintiff") through his undersigned counsel and files his Complaint under Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12181 et seq for declaratory and injunctive relief.

## JURISDICTION, PARTIES, AND ARTICLE III STANDING

1.  This is an action for declaratory and injunctive relief pursuant to Title III of the ADA and its implementing regulations, and this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2.  Venue is proper in this Court, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Southern District of Mississippi.

3.  Plaintiff, Patrick Dunn, resides in Andalusia, Alabama. On March 8, 2001, Mr. Dunn was injured in an automobile accident that caused permanent damage to his C-7 vertebra in his spinal cord. As a result, he became paralyzed and uses a wheelchair for mobility and experiences restricted ability to use his hands,

arms, and legs. Mr. Dunn is, accordingly, a person with a disability pursuant to the Americans with Disabilities Act, in that he has a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; See also 28 C.F.R. § 36.104.

4.    Defendant, Taco Bell of America, LLC, (hereinafter "Taco Bell"), is a corporation that is both registered to conduct business and is conducting business within the State of Mississippi sufficient to create both general and specific in personam jurisdiction. Upon information and belief, Taco Bell of America, LLC, "owns" and "operates" the Taco Bell quick service restaurant ("restaurant") located at 9384 US 49 Gulfport, Mississippi 39503. 42 U.S.C. § 12182. The restaurant is a commercial facility in that the facility is intended for nonresidential use and affects commerce. 42 U.S.C. § 12181(2)((A). Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the Defendant's establishment is a place of public accommodation in that it is a restaurant providing food and drink to the public. Accordingly, it is covered by the ADA and must comply with the Act.

5.    All events giving rise to this lawsuit occurred in the Southern District of Mississippi and the Defendant is a citizen thereof.

6.    Plaintiff Patrick Dunn, enjoys vacationing in the Mississippi Gulf Coast area because he enjoys the different types of entertainment, nightlife, and food variety that the Gulf Coast offers. Plaintiff has recently visited the Restaurant, specifically and enjoys the Mexican cuisine and service offered at Taco Bell quick service restaurants. He intends  to continue going to Taco Bell because

he enjoys the Mexican inspired quick service dining that provides customizable or made to order tacos and burritos, among other choices. Plaintiff will return not only to dine at the restaurant, but also to confirm compliance with the ADA by the Defendant. Plaintiff cannot provide a specific time and date upon which he will return to the restaurant because he has not and should not be expected to engage in such definite future planning. Plaintiff, like other fast food customers, often patronizes a fast food establishment on the spur of the moment. Nevertheless, Plaintiff definitely intends to return to the restaurant.

7.  Because of the barriers described herein, Plaintiff has been denied full and equal enjoyment of the Defendant's premises on the basis of his disabilities.

8.  Plaintiff accordingly, has Article III standing to pursue this case because (1) he is a person with a disability, pursuant to the statutory and regulatory definition; (2) the Defendant's restaurant is a place of public accommodation, pursuant to the statutory and regulatory definition; (3) he has suffered a concrete and particularized injury by being denied access to the establishment by architectural barriers, by being denied access by the Defendant's practices described herein, and by Defendant's denial of the use of the restaurant for his full and equal enjoyment as compared to people without disabilities. and (4) because of these injuries, there exists a genuine threat of imminent future injury. Furthermore, due to these injuries, there exists a genuine threat of imminent future injury as long as the barriers described remain at the facility.

## COUNT ONE
### (Architectural Barriers)

**9.**   Plaintiff incorporates by reference and realleges all the paragraphs above.

**10.**   Defendant has failed to design and construct this restaurant in accordance with
the ADA standards as required and has failed to bring the restaurant into
compliance with the applicable ADA Standards when the facility was
subsequently altered.

**11.**   In enacting the ADA, Congress found, among other things that Persons with
disabilities continually encounter various forms of discrimination, including
outright intentional exclusion, the discriminatory effects of architectural,
transportation, and communication barriers, overprotective rules and policies,
failure to make modifications to existing facilities and practices, exclusionary
qualification standards and criteria, segregation, and relegation to lesser
services, programs, activities, benefits, jobs, or other opportunities. 42 U.S. C.
§12101(A)(5).

**12.**   In response to these findings, Congress explicitly stated that the purpose of the
ADA was to:

    **A.** Provide a clear and comprehensive national mandate for elimination of
discrimination against individuals with disabilities;

    **B.** Provide clear, strong, consistent, enforceable standards addressing
discrimination against individuals with disabilities; and

    **C.** Invoke the sweep of congressional authority, including the power to
enforce the Fourteenth Amendment and to regulate commerce, in order

to address the major areas of discrimination faced on a daily basis by people with disabilities. 42 U.S.C. § 12101(b)(1)(2) and (4).

13.   The ADA was enacted requiring that facilities constructed prior to January 26, 1992, are considered an "existing" "facility, such that those facilities must remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All "alterations" made to existing facilities after January 26, 1992, and all "new construction" after January 26, 1993, were required to be *readily accessible to and usable by individuals with disabilities*, including *individuals who use wheelchairs*. 42 U.S.C. § 12183(a) and (b). 28 *C.F.R.* § 36.402. "Readily accessible to and usable by. . ." was and is the "new construction" standard, which requires compliance with the Department of Justice standards. 42 U.S.C. § 12183(a)(1); 28 *C.F.R.* § 36.406. The only defense for failing to provide readily accessible and usable buildings constructed under the "new construction" standards is if the design and construction of the building to be readily accessible and usable is "structurally impracticable". 42 U.S.C. § 12183(a)(1). The "structural impracticability" defense applies only in rare circumstances of extraordinary terrain. 28 *C.F.R.* § 36.401(c). "Readily accessible to and usable by. . ." is also the "alterations" standard. 42 U.S.C. § 12183(a)(2). "Alterations" must be made to the maximum extent feasible.  42 U.S.C.  § 12183(a)(2); 28 *C.F.R.* § 36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 *C.F.R.* § 36.402(b).

14.     New construction and alterations must comply with either the Justice
Department's 1991 Standards for Accessible Design, or the 2010 Standards for
Accessible Design. 28 *C.F.R.* § 36.406 establishes whether the 1991 Standards
for Accessible Design or 2010 Standards for Accessible Design apply: New
construction and alterations subject to §§ 36.401 or 36.402 shall comply with
the 1991 Standards if the date when the last application for a building permit
or permit extension is certified to be complete by a State, county, or local
government is before September 15, 2010, or if no permit is required, if the start
of physical construction or alterations occurs before September 15, 2010. 28
*C.F.R.* § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or
36.402 shall comply either with the 1991 Standards or with the 2010 Standards
if the date when the last application for a building permit or permit extension
is certified to be complete by a State, county, or local government is on or after
September 15, 2010, and before March 15, 2012, or if no permit is required, if
the start of physical construction or alterations occurs on or after September 15,
2010, and before March 15, 2012. 28 *C.F.R.* § 36.406(a)(2). New construction
and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010
Standards if the date when the last application for a building permit or permit
extension is certified to be complete by a State, county, or local government is
on or after March 15, 2012, or if no permit is required, if the start of physical
construction or alterations occurs on or after March 15, 2012. *Where the facility
does not comply with the 1991 Standards, the 2010 Standards are applicable*. See 28
C.F.R. § 36.406(5)(ii) which states, "Newly constructed or altered facilities or

elements covered by §§ 36.401 or 36.402 that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards."

15.   Plaintiff is informed and believes based on publicly available information that the building in which the restaurant is located was first constructed in 1998.

16.   Plaintiff is further informed and believes based on publicly available information that the restaurant underwent alterations and/or improvements after 1998.

17.   The following is a specific, although not exclusive, list of unlawful physical barriers, dangerous conditions and ADA violations which preclude or limit Plaintiff's ability (because of his disabilities) to access the Property and/or fully and equally enjoy the goods, services, facilities, privileges, advantages and/or accommodations offered in the facility. The citations are to the ADA 2010 Standards, because the 2010 Standards are applicable to modifications made after March 15, 2012. 28 C.F.R. § 36.406(5)(ii).

A.  Based on the total number of parking spaces at the restaurant, Defendant has failed to provide the required number of accessible parking spaces. Standards § 208.2 and 508;

B.  Defendant has failed to provide at least one "van" accessible parking space measuring 132 inches wide with a 60-inch-wide adjacent access aisle, or alternatively measuring 96 inches wide with a 96-inch-wide adjacent access aisle. Standards § 208.2.4 and 502.2;

**C.** Defendant has failed to provide required signage for accessible parking. Standards § 502.6 and 502.2;

**D.** Defendant has failed to provide the required minimum slope level at the existing designated accessible parking spaces and access aisles because running and/or cross slopes exceed the maximum slope requirement of "no less than 1:48 in any direction", in violation of Standards 208 and 502.4;

**E.** Defendant has failed to provide the required accessible routes from the parking lot to the entrance, including uneven paths of access. The protrusion of the curb ramp into the designated access aisle further demonstrates the violation of the maximum slope requirements for accessible parking spaces and access aisles. Standards 206, 402 and 403;

**F.** The slope of the curb ramp leading from the designated access aisle is too steep in violation of Standard 406. In addition, the slope of the flared sides exceeds the minimum slope requirement in violation of Standard 406.3;

**G.** The check-out counter fails to meet the 36-inch height and length requirements in violation of §904;

**H.** The self-servicing condiment counters and self-servicing drink dispensers and counters fail to comply with the reach ranges of §308 and §9.4.5.1;

**I.** The dining area does not contain the required 5% of the tables which meet the height and knee clearance requirements of §226 and §902.3;

**J.** Counters and bars are not installed within an accessible height range as required by Standards 226, 227, 902 and 904;

**K.** In the men's restroom accessible stall, the rear and side grab bars are positioned more than the required maximum distance from the adjacent walls in violation of 609.3;

**L.** The stall door pull does not meet the requirements of 404.2.7;

**M.** The location of the toilet paper dispenser is in violation of 607.4 and 309.4;

**N.** The coat hook on the stall door is too high in violation of 603.4 and the reach ranges specified in 308;

**O.** The centerline of the toilet fails to meet the required distance from the side wall in violation of 604.2;

**P.** The required clear floor space is not provided at the urinal in violation of 6.5.3;

**Q.** The lavatory faucets require tight grasping in violation of 6.6.4;

**R.** The lavatory water and drain pipes are not insolated in violation of 6.6.5;

**S.** The counter or rim of the lavatory is mounted at a height which exceeds the requirements of 606.3.

**T.** The trash can is located beneath the paper towel dispenser and encroaches into the clear floor space required at the lavatory and paper towel dispenser.

18. The above listing is not intended to be an all-inclusive list of the barriers, conditions and violations of the ADA encountered by Plaintiff and existing at the Property. Although, the above listing, in and of itself, denied and still denies Plaintiff, due to his disabilities, and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations offered at the Property in violation of the ADA. Plaintiff requires full and complete inspection of the Property, with full access thereto, in order to determine all of the Defendant's discriminatory acts violating the ADA relevant to Plaintiff's disabilities.

19. Plaintiff believes that violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the Statute.

20. Failure of the Defendant to "design and construct" and alter this facility in compliance with the ADA's New construction standards is a direct violation of the statute, and more specifically, has a discriminatory impact on Plaintiff and all persons similarly situated.

**COUNT TWO**

*Failure to modify policies, practices, and procedures which deny equal access to benefits and services*

**(42 U.S.C. § 12182(b)(2)(A)(ii))**

**21.**     Plaintiff incorporates by reference and realleges all the paragraphs above.

**22.**     The ADA, Title III, specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A))(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). In other words, persons with disabilities must receive equal benefits as compared to the benefits received by persons without disabilities. Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs and mobility aids have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs and mobility aids historically have been provided "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

**23.**     ADA, Title III requires a public accommodation to provide individuals with disabilities *more than simple physical access.* Creating unlawful architectural barriers by failure to design, construct and alter the facility in accordance with the ADA Standards as set forth in Count One of this Complaint is but one component of compliance with ADA, Title III. Congress recognized that

"individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

24.   For this reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation. 42 U.S.C. § 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit held in _Rendon v. Valleycrest Prod., Ltd._ 294 F.3d 1279, (11th Cir. 2002) that:

> "_A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both_ tangible barriers _(emphasis added), that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and_ intangible barriers _(emphasis added), such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled_

> *person's ability to enjoy the defendant entity's goods, services and privileges."*

25.   Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes: "*a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations*."

26.   Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, full and equal access to goods or services to persons with disabilities.

27.   Defendant either has no policies, practices, and procedures to remove architectural barriers or else does not abide by them. The architectural barriers identified in Count One establish that Defendant has failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices as to architectural barriers.

28.   Defendant's obvious disregard for compliance with the ADA's alteration standards reflects, at a minimum, a policy which excludes persons with disabilities in the planning and implementation of alterations of the facility. Renovation of the facility afforded Defendant a post-construction opportunity to bring the restaurant into compliance with the ADA Standards, but Defendant's policies and practices of non-compliance with the ADA's

alteration standards effectively ensure that persons with disabilities continue to have unequal access to the services and accommodations offered.

29. Defendant's practices at the restaurant literally create barriers and in so doing deny Plaintiff the full and equal enjoyment of the establishment. Those practices include but are not limited to:

A. Defendant denies accessible and useable parking to persons with disabilities;

B. Defendant provides an unequal path of travel from the parking area to the entrance by maintenance of a non-compliant curb ramp as a part of the path of travel. These barriers may force some persons with physical disabilities to seek assistance getting into and out of the restaurant, whereas, persons without disabilities can easily access the facility's entrance and exit

C. Defendant makes self-service counters and drink machines throughout its facility inaccessible for use by persons with disabilities by failing to provide these elements at a reachable height for persons with disabilities. Because these service counters and items are not accessible for people with physical disabilities, Defendant appears to have no policy of providing assistance or allowing a person with a disability to access these services independently;

D. Defendant makes its check-out counter inaccessible to persons with disabilities by failing to provide the counter at a reachable height. Because the service counter is not accessible for people with physical

disabilities, Defendant appears to have no policy of providing assistance or allowing a person with a disability to independently access the services of paying for, ordering and picking up food;

**E.** Defendant makes its service counter and Point of sale machines inaccessible to persons with disabilities by failing to locate these items within a reachable range. Because the service counter is not accessible for people with physical disabilities, Defendant appears to have no policy of providing assistance or allowing a person with a disability to access the service counter and independently use the Point of Sale Machines;

**F.** Defendant's seating arrangements in the dining area are designed, positioned, and oriented in a way that excludes or otherwise segregates persons who use wheelchairs to an experience that is not the same restaurant experience that is afforded to persons who do not use wheelchairs. Persons using wheelchairs are forced to sit at only one type of table or facing the wall, and, therefore, are blatantly excluded from the diversity of seating locations and scenery offered to persons without disabilities;

**G.** Defendant makes its toilet facilities inaccessible for use by persons with disabilities by failing to maintain the required ADA accessible elements within the restrooms so that Plaintiff is denied the opportunity to independently use all the features in the restroom;

H. Defendant lacks a policy that is reasonably calculated to ensure that its website and mobile application ("mobile app") are fully accessible to and independently useable by persons with disabilities.

30. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant either has no policies, practices, or procedures, or else it has failed to implement them, to ensure that any removal of architectural barriers is permanent. 42 U.S.C. § 12182(b)(2)(a)(iv) and (v).

31. To date, the Defendant's discriminating policies, practices, and/or procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities. A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations.

32. Defendant, "owns" and "operates" or "leases" the restaurant which is the subject of this action and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

33. Plaintiff, hereby, provides sufficient notice of his demands for a modification of Defendant's policies, practices, and procedures.

34. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. he is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

**35.**   Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal

policies, practices, and procedures.

### COUNT THREE
*Plaintiff has been denied Full and Equal Enjoyment of the goods, services and facilities of the restaurant*
**(42 U.S.C. §12182(a))**

**36.**   Plaintiff incorporates by reference and realleges all the paragraphs above.

**37.**   42 U.S.C. § 12182(a) provides:

> *"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."*

**38.**   Congress enacted the ADA upon finding, among other things, that "society has

tended to isolate and segregate individuals with disabilities" and that such

forms for discrimination continue to be a "serious and pervasive social

problem." 42 U.S.C. § 12101(a)(2).

**39.**   Congress also found that: "*individuals with disabilities continually encounter various*

*forms of discrimination, including outright intentional exclusion, the discriminatory*

*effects of architectural, transportation, and communication barriers, overprotective rules*

*and policies, failure to make modifications to existing facilities and practices,*

*exclusionary qualification standards and criteria, segregation, and relegation to lesser*

*services, programs, activities, benefits, jobs, or other opportunities,* 42 U.S.C. §

12101(a)(5); "*the nation's proper goals regarding individuals with disabilities are to*

*assure equality of opportunity, full participation, independent living, and economic self-*

*sufficiency for such individuals;*" 42 U.S.C. § 12101(a)(7). Congress even found

that: "*the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.*" 42 U.S.C. § 12101(a)(8).

40.     In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

41.     The ADA provides, inter alia, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

42.     The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability ... with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

43.     To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than

simple physical access. Congress recognized that "individuals with disabilities continually encounter *various forms of discrimination"* including not only barriers to physical access, but also other forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities*. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

44.     For that reason, the Act applies to any barrier that denies or diminishes disabled individuals' *full and equal enjoyment* of the privileges and *services* offered by the public accommodation. 42 U.S.C. 12182.

45.     The keystone for analysis of full and equal enjoyment is Defendant *must start by considering how its facilities are used by non-disabled guests and then take reasonable steps to provide guests with disabilities with a like experience*. Spector v. Norwegian Cruise Line Ltd., 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L . E d . 2d 97 (2005).

46.     Plaintiff demands to be afforded the same level of service and treatment as that offered to non-disabled individuals, so as to be offered the same experience as those not disabled.

47.     Plaintiff specifically and definitely wants to return to the Defendant's

restaurant to enjoy Taco Bell's Mexican inspired quick service dining consisting of customizable or made to order tacos and burritos, among other choices as a part of the dining experience. More specifically, Plaintiff demands to be afforded the same level of service and same experience that is offered to non-disabled individuals and which Defendant has failed to provide to Plaintiff, as follows: Defendant failed to provide an accessible parking area and accessible route into the Taco Bell quick service restaurant for disabled individuals, which means Plaintiff cannot park, cannot independently get out of his car and onto his wheelchair, cannot independently travel from the parking lot into Taco Bell, cannot determine if there are usable purported accessible parking spaces, and must determine by trial and error how he is to park and move into the Taco Bell quick service restaurant; Defendant failed to provide an accessible route to and throughout the restaurant and dining area for patrons with disabilities, which means that unlike the non-disabled, persons with disabilities must struggle to move into and throughout the restaurant and dining area, if they can make it at all; Defendant failed to provide an accessible restroom for individuals with disabilities, which means that, unlike the able-bodied, persons with disabilities are challenged or denied the opportunity to independently use the restroom, clean up after using the restroom, move throughout the restroom, and use the other elements of the restroom; Defendant failed to provide Plaintiff that same experience that non-disabled individuals have when dining at the Taco Bell quick service restaurant; Defendant failed to provide the same experience by making it nearly impossible

for persons with disabilities to be able to independently access items maintained on the self-service counters, while the non-disabled can independently access the items on the self-service counters; Defendant failed to provide the same experience by making it nearly impossible for patrons with disabilities to access the service counter, while the non-disabled can independently access the counter and the services provided at the counter; Defendant failed to provide Plaintiff and other individuals with disabilities the same opportunity to use point of sale machines at the service counter to pay for purchases; Defendant failed to provide Plaintiff that same online experience non-disabled individuals have which includes finding Taco Bell locations, viewing the menu, and ordering on the online website; Defendant failed to provide Plaintiff the same experience by failing to provide a mobile application service that allows persons with impairments to search for Taco Bell locations, view the menu, order through the mobile application and pick up the order at the drive thru, while persons without disabilities are able to independently use the mobile application and all its features; and all the foregoing failures by Defendant inhibited Plaintiff from having the same experience that non-disabled individuals have when dining at the Taco Bell quick service restaurants.

48.    Similarly, Defendant has demonstrated a policy which discriminates against persons with disabilities in the design and use of its mobile app. More specifically, Defendant is excluding, denying services, and otherwise segregating Plaintiff from all of the benefits and services Defendant offers through its mobile app by designing the app with features which are

incompatible with assistive technology which includes but is not limited to voice recognition, alternative input methods, assistive touch functions, and other accessible technology methods that Plaintiff requires to equally access Defendant's mobile platform.

49.   Accordingly, Defendant's "use" of the accessible features constitutes statutory discrimination in violation of the ADA, because Defendant has segregated and separated persons with disabilities from non-disabled individuals. "*The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected.*" *H.R. Rep. No. 101-485(III), at 50, 1990 U.S.C.C.A.N at 473.* The ADA provides a "broad mandate" to "eliminate discrimination against disabled individuals, and to integrate those individuals into the economic and social mainstream of American life. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675, 121 S.Ct.1879, 149 L.Ed.2d 904 (2001) (*quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332*).

50.   Defendant discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the facility during each visit. Each incident of deterrence denied Plaintiff an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of the restaurant.

51.   Defendant's conduct and Defendant's unequal treatment of Plaintiff constitute continuous violations of the ADA and absent a Court ordered injunction

from doing so, Defendant will continue to treat Plaintiff and others similarly situated unequally.

52.   Defendant's failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitutes continuous discrimination and absent a Court ordered injunction, Defendant will continue to not maintain the required accessible features at Defendant's facility. 28 C.F.R. § 36.211(a).

53.   Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

54.   Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of Defendant.

### COUNT FOUR
### *(Failure to Provide Website Accessibility)*

55.   Plaintiff incorporates by reference and realleges all the paragraphs above.

56.   The ADA's legislative history provides that integration is fundamental to the purposes of the ADA. Provision of segregated accommodations, goods and services relegate persons with disabilities to be an inferior second-class citizen. *H. Rep. 101–485(III), 101st Cong., *1279 2d Sess., at 56, reprinted in 1990 U.S.C.C.A.N. 445, 479.* "*The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected.*" *Id. at 50, 1990 U.S.C.C.A.N. at 473.*

57.   Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including

outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5).

58. Legislative history indicates that websites of public accommodations are covered by Title III. Although the internet did not exist when Congress enacted the ADA in 1990, the legislative histories state that Congress intended to include the use of new and evolving technologies by public accommodations and other covered entities in meeting their ADA obligations. Consequently, it is consistent with Congressional intent to include within Title III's coverage the goods and services provided by public accommodations through their websites. *See Nat'l Fed'n of the Blind v. Scribd*, 97 F.Supp. 3d 565, 574 (D. Vt. 2015).

59. The Justice Department has long affirmed the application of Title III to the websites of public accommodations. *The statute's broad and expansive nondiscrimination mandate reaches goods and services provided by covered entities on Web sites over the Internet."* 75 Fed Reg. 43,460, 46,463 See also <u>*Netflix,*</u> 869 F. Supp. 2d at 200 *(excluding web-based services would "run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages available indiscriminately to other members of the general public."* <u>*Carparts Distribution Center, Inc. v. Automotive*</u>

_Wholesaler's Association of New England, Inc.,_ 37 F.3d 12, 20 (1st Cir. 1994).

60.     Today, internet technology enables individuals to participate actively in their community and engage in virtually all forms of commerce from the comfort and convenience of their home, to the extent that virtual reality through the internet is almost as important as physical reality in brick-and-mortar constructed public accommodations, in pursuing commerce from public accommodations. That websites were not explicitly written into the ADA at its passage in the early 1990s but are nevertheless covered does not indicate ambiguity in the ADA, but rather the breadth of the ADA. _Andrews v. Blick Art Materials, LLC_, No. 17-CV-767, 2017 WL 3278898, (E.D.N.Y. Aug. 1, 2017).

61.     The design of Defendant's website does not allow Plaintiff to use the website in the same manner as individuals without disabilities, because the website fails to integrate alternative platforms that enable individuals with disabilities who have limited use of their hands the opportunity to use the alternative platforms to navigate and select items on the page. The able-bodied online website user can use a mouse to navigate, whereas individuals who have limited use of their hands cannot use a mouse and rely on assistive technology and accessible website design to navigate through the website. Moreover, Defendant provides a plethora of services and associated benefits, including but not limited to: restaurant locators, online ordering, rewards benefits, among other services to able-bodied individuals, but fails to provide those same services to individuals with disabilities  which relegates and otherwise segregates them to inferior benefits and services of Taco Bell.

62.   The design of Defendant's web site impedes Plaintiff and others similarly situated from accessing the services, privileges and accommodations afforded able-bodied patrons through the web platform. The website fails to integrate alternative access methods that allow a person with limited manual dexterity to access the information and navigate the web site without being able to use a mouse. That is, the website design does not provide for functions to be carried out using a keyboard or voice input. On its website, Defendant provides a plethora of services and associated benefits, including but not limited to: restaurant locators, online ordering, and reward benefits, among other services to the general public, but fails to provide those same services to persons with disabilities. Such actions relegate and otherwise segregate persons with disabilities to inferior benefits and services offered by the restaurant.

63.   As pled previously, intangible barriers to access are prohibited, just as tangible barriers are prohibited.

64.   The actions by the Defendant violate the following statutory and regulatory provisions of the ADA:

   A.  42 U.S.C. § 12182(a), because its actions deny Plaintiff full and equal enjoyment of Defendant's goods and services;

   B.  42 U.S.C. § 12182(b)(1)(A)(i), because Defendant's actions deny Plaintiff equal participation in goods and services offered by the Defendant;

   C.  42 U.S.C. § 12182(b)(1)(A)(ii) and (iii), because Plaintiff is provided

both separate and unequal benefits of Defendant's goods and services;

**D.** 42 U.S.C. § 12182(b)(1)(B), because Defendant does not provide its goods and services in the most integrated setting appropriate;

**E.** 28 C.F.R. 36.303(c), because Defendant has failed to provide auxiliary aids and services where necessary to ensure effective communication with the Plaintiff.

**65.** Plaintiff does not allege that there are a particular set of mandatory regulations for websites that establish compliance or non-compliance as a matter of law. Plaintiff pleads, consistent with the Department of Justice determinations, that in achieving such conformance and usability of websites by individuals with disabilities, Defendant should rely upon the User Agent Accessibility Guidelines ("UAGG") 1.0, the Authorizing Tool Accessibility Guidelines ("ATAG") 2.0, and the Guidance on Applying WCAG 2.0 to Non-Web Information and Communications Technologies ("WCAH2ICT"), published by the W3C, as well as guidance published by the W3C's Mobile Accessibility Task Force, as stated guidance published by the W3C's Mobile Accessibility Task Force.

**66.** To date, the Defendant's discriminating actions continue.

**67.** As pled above, Taco Bell of America, LLC is the "owner" of the public internet website tacobell.com and "operates" the world-wide websites services that are available to the public at Taco Bell. Defendant, therefore, is responsible for the design and maintennance  for of the website.

68.    Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

69.    Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal actions by Defendant.

**COUNT FIVE**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III**
*(Failure to Provide Mobile Application Accessibility)*

70.    Plaintiff incorporates by reference and realleges all the paragraphs above.

71.    The ADA was the most sweeping civil rights legislation since the Civil Rights Act of 1964. When it was enacted Congress had no conception of how the Internet would change global commerce. "[W]e were not communicating by e-mail, blog, or tweet; we were not filling virtual shopping carts with clothes, books, music, and food; we weren't banking, renewing our driver's licenses, paying taxes or registering for and taking classes online. Congress could not have foreseen these advances in technology. Despite Congress' great cognitive powers, it could not have foreseen these advances in technology which are now an integral part of our daily lives. Yet Congress understood that the world around us would change and believed that the nondiscrimination mandate contained in the ADA should be broad and flexible enough to keep pace." *Achieving the Promises of the Americans with Disabilities Act in the Digital Age— Current Issues, Challenges and Opportunities: Hearing before the H. Subcomm. on the Constitution, Civil Rights, and Civil Liberties of the House Comm. on the Judiciary,* 111th Cong., 2d Sess. 111–95 (2010).

72.     Since the internet plays such a critical role in the personal and commercial lives of Americans, excluding persons with disabilities  from access to covered entities that use the internet and mobile applications as a means of reaching the public would defeat the purpose of this important civil rights legislation. In today's society, places of public accommodation are increasingly using mobile applications ("mobile apps") to provide services, benefits and goods more effectively to the public and expand the services the public accommodation has to offer in new ways. These services that are provided by public accommodations through web applications, mobile applications, and hybrid applications ("mobile platform") also should be provided to individuals with disabilities.

73.     ADA Title III states that discrimination includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(iii). Regulations promulgated by DOJ implementing Title III require public accommodations to provide "appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). Auxiliary aids and services include . . . *accessible electronic and information technology*, among other methods.  28

C.F.R. § 36.303(b). Auxiliary aids and services also include acquisition or modification of equipment or devices, and other similar services and actions, which would allow a person with a disability to, not only receive communications from a public accommodation, but would also permit that person to interact with and participate in programs which are often available on a mobile platform only.  28 C.F.R. 36.303(b)(3)-(4).

74.   The plain language of these statutory provisions applies to discrimination in offering the goods and services ''of'' a place of public accommodation or the services, programs, and activities ''of'' a public entity, rather than being limited to those goods and services provided ''at'' or ''in'' a place of public accommodation or facility of a public entity.

75.   The ADA and the Title III regulation, ---start the sentence with the Since clause.) since their enactment and promulgation, have always required that public accommodations provide effective communication to persons with disabilities through the provision of auxiliary aids and services. A commercial transaction between a customer and a public accommodation requires communication and interaction between the two. Defendant has chosen to provide a service through a mobile application to locate Taco Bell quick-service restaurants, view the Taco Bell menu, order food online, enjoy rewards programs, among many other services through the mobile platform. The Defendant furnishes all of these services and features to able-bodied individuals. Yet, Defendant's use of and design of its mobile application and the services it offers through the application do *not* effectively communicate

and provide services to individuals with disabilities. This is contrary to the broad mandate of the ADA which prohibits not only outright exclusion but also unnecessary differential treatment. See 42 U.S.C. §§ 12182(a), (b)(1)(A), (b)(2)(A)(iii). Congress expressly stated when passing the ADA, "…*the types of accommodations and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times[,]*" and that technological advances "*may require public accommodations to provide auxiliary aids and services in the future which today would not be required because they would be held to impose undue burdens on such entities*." *See* H.R. Rep. No. 485, pt. 2, at 108 (1990).

76.   The unlawful implementation of eligibility criteria in other contexts that are clearly covered by the Act is analogous to the Defendant's effective screening of Plaintiff from using its mobile app. For example, there is no question that the administration of admission testing by a private secondary school falls within the scope of Title III. See 42 U.S.C.Section 12189; 28 C.F.R. 36.309. There would be little question that the ADA would apply, and would be violated, if Defendant screened guests as they entered, sending home guests on the grounds that they had disabilities such as deafness, or physical impairments or had diabetes or any other disability. See 28 C.F.R. Pt. 36 App. B, p. 640 (commentary to 28 C.F.R. 36.301) ("*It would violate this section to establish exclusive or segregative eligibility criteria that would bar, for example, all persons who are deaf from playing on a golf course or all individuals with cerebral palsy from attending a movie theater*."). ("*An insurance company can no more refuse to sell a policy*

*to a disabled person over the Internet than a furniture store can refuse to sell furniture to a disabled person who enters the store'. Accordingly, the site of the sale is irrelevant. All that matters is whether the good or service is offered to the public.* (*Nat'l Fed'n of the Blind. Scribd Inc.*, 97 F. Supp. 3d 565 (D. Vt. 2015). The Defendant's failure to design its mobile platform in order to permit access by persons using assistive technology in relation to its mobile app directly and physically screens and prevents the Plaintiff from being able to use the mobile app, just as if Defendant in its restaurant placed items outside the Plaintiff's reach or placed a flight of stairs at the front door without a ramp.

77.   In our contemporary technological society, "excluding businesses that sell services through the Internet from the ADA would 'run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages available indiscriminately to other members of the general public." *Netflix*, 869 F.Supp.2d at 200 (quoting *Carparts,* 37 F.3d at 20). (quoting *Nat'l Fed'n of the Blind. Scribd Inc.*, 97 F. Supp. 3d 565 (D. Vt. 2015).

78.   Defendant's actions   diminish Plaintiff's rights under the ADA to fully participate in all aspects of society, which is counter to Congress' goal. Defendant's ableism, as described throughout the Complaint, is excluding Plaintiff from equality of opportunity, full participation, independent living, and economic self-sufficiency and in doing so excludes Plaintiff from a plethora of goods and services that are offered through the mobile platform which includes but is not limited to the following:

a) Defendant is excluding, denying services, and otherwise segregating Plaintiff from all of the benefits and services Defendant offers through its mobile apps as a result of its failure to modify its mobile application platform to allow assistive technology, which includes, but is not limited to, voice recognition, alternative input methods, assistive touch functions, among other accessibility methods that Plaintiff requires, to compete on an equal basis and maintain independence and self-sufficiency;

b) Defendant is excluding, denying services, or otherwise segregating Plaintiff, because unlike able bodied individuals, individuals with disabilities are excluded from Defendant's services that enable individuals to locate the nearest Taco Bell quick-service restaurant through the mobile apps;

c) Defendant is excluding, denying services, or otherwise segregating Plaintiff, because unlike able bodied individuals, individuals with disabilities are excluded from Defendant's services that enable individuals to register their emails or Facebook accounts to receive rewards and other exclusive benefits through the mobile apps;

d) Defendant is excluding, denying services, or otherwise segregating Plaintiff, because unlike able bodied individuals, individuals with disabilities are excluded from Defendant's services that enable individuals to establish a Taco Bell account and enjoy the benefits which include but are not limited to (1) quick ordering, (2) exclusive

offers, and (3) pay ahead options to skip the line, through the use of the mobile apps;

e)  Defendant is excluding, denying services, or otherwise segregating Plaintiff, because unlike able bodied individuals, individuals with disabilities are excluded from Defendant's services that enable individuals to access and view all of the benefits of Taco Bell as well as to receive the benefits of the Taco Bell rewards account through the use of the mobile apps;

f)  Defendant is excluding, denying services, or otherwise segregating Plaintiff, because unlike able bodied individuals, individuals with disabilities are excluded from Defendant's services that enable individuals to view the Taco Bell menu through the mobile apps;

g)  Defendant is excluding, denying services, or otherwise segregating Plaintiff, because unlike able bodied individuals, individuals with disabilities are excluded from Defendant's services that enable individuals to place an order through the mobile apps and skip the line;

h)  Defendant is excluding, denying services, and otherwise segregating Plaintiff as a result of its failure to modify equipment, devices and/or other similar services. 28 *C.F.R.* § 36.303(b)(3)-(4).

i)  Defendant is excluding, denying services, or otherwise segregating Plaintiff of all the goods and services offered on its mobile apps as a result of Defendant's failure to design its mobile apps which would

allow access by patrons using alternative assistive technology;

79.    The design of Defendant's mobile app impedes Plaintiff and others similarly situated from accessing the services, privileges and accommodations afforded patrons through the mobile app. The mobile app fails to integrate alternative access methods that allow a person with limited manual dexterity in their hands to access the information and navigate the mobile app.

80.    The actions by the Defendant violate

The following statutory and regulatory provisions of the ADA:

A.    42 U.S.C. § 12182(a), because its actions deny Plaintiff full and equal enjoyment of Defendant's goods and services;

B.    42 U.S.C. § 12182(b)(1)(A)(i), because Defendant's actions deny Plaintiff equal participation in goods and services offered by the Defendant;

C.    42 U.S.C. § 12182(b)(1)(A)(ii) and (iii), because Defendant has provided both separate and unequal benefits of Defendant's goods and services to Plaintiff and others similarly situated;

D.    42 U.S.C. § 12182(b)(1)(B), because Defendant does not provide its goods and services in the most integrated setting appropriate;

E.    28 C.F.R. 36.303(c), because Defendant has failed to provide auxiliary aids and services where necessary to ensure effective communication with the Plaintiff, as a person with a disability.

81.    Plaintiff does not allege that there are a particular set of mandatory regulations for mobile applications that establish compliance or non-compliance as a

matter of law. Plaintiff pleads, consistent with the Department of Justice determinations, that in achieving such conformance and usability of mobile apps by individuals with disabilities, Defendant should rely upon the User Agent Accessibility Guidelines ("UAGG") 1.0, the Authorizing Tool Accessibility Guidelines ("ATAG") 2.0, and the Guidance on Applying WCAG 2.0 to Non-Web Information and Communications Technologies ("WCAH2ICT"), published by the W3C, as well as guidance published by the W3C's Mobile Accessibility Task Force, as stated guidance published by the W3C's Mobile Accessibility Task Force.

82.    To date, the Defendant's discriminating actions continue.

83.     As pled above Taco Bell of America, LLC, "owns" the Taco Bell mobile application and its goods and services offered on the mobile app, and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining all aspects of its mobile platform in a manner which provides effective communication and equal services to persons with disabilities.

84.    Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

85.    Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal actions by Defendant.

**WHEREFORE**, premises considered, Patrick Dunn demands judgment against the Defendant on Counts One, Two, Three, Four, and Five, and requests the following injunctive and declaratory relief:

1. That the Court declare that the property owned and business operated by the Defendant as well as all Defendant's illegal actions described herein violate the Americans with Disabilities Act, as more particularly described above;

2. That the Court enter an order directing the Defendant to alter the facility to make it accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. § 12182(b)(2)(A)(iv) and its implementing regulations, as stated in Count One;

3. That the Court enter an order, in accordance with Count Two, directing the Defendant to modify its policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendant to make its business practices consistent with ADA Title III in the future;

4. That the Court enter an order directing the Defendant to provide Plaintiff full and equal access both to the Taco Bell experience and to the use of the establishment, and further order Defendant to maintain the required accessible features at the facility so that Plaintiff and others similarly situated are offered the same experience that is offered to members of the general public without disabilities, as stated in Count Three. 42 U.S.C. § 12182(a).;

5. That the Court enter an order requiring that Defendant adopt and implement a website accessibility policy and take the necessary actions to make its website

accessible to the Plaintiff, as particularly described in Count Four;

6.  That the Court enter an order requiring Defendant to place on its homepage a statement concerning its website accessibility policy; provide training to all its workers and associates who write or develop programs or code; and test its website quarterly to identify and repair any incidence of nonconformance;

7.  That the Court enter an order requiring Defendant adopt and implement a mobile application accessibility policy and take the necessary actions to make its mobile application accessible to the Plaintiff, as particularly described in Count Five;

8.  That the Court enter an order requiring Defendant to place on its mobile application a statement covering its mobile application accessibility policy; provide training to all its workers and associates who write or develop the programs and code for the mobile application; and test the mobile application quarterly to identify and repair any incidents of non-conformance;

9.  That the Court award reasonable attorney's fees, costs, (including expert fees) and other expenses of suit, to Plaintiff; and

10. That the Court award such other, further, and different relief as it deems necessary, just, and proper.

Respectfully Submitted, this _____ Day of March, 2018.

/s/ _____

**Pshon Barrett**
MS- 2071
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.521.3859 f
Pshon.Barrett@ADA-Firm.com
*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned

Complaint for service of process by USPS mail or electronic mail, postage prepaid and

properly addressed this ___9th___ day of March, 2018 to the following:

**TACO BELL OF AMERICA, LLC**
c/o C T Corporation System
attn.: Registered Agent
645 Lakeland Drive East Dr., Suite 101
Flowood, MS 39232

/s/ _____

**Pshon Barrett**
MS- 2071
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.521.3859 f
Pshon.Barrett@ADA-Firm.com
*Attorney for the Plaintiff*